UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

SAMUEL G.,

        Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

1:20-cv-07352-NLH

**OPINION**

---

**APPEARANCES:**

JENNIFER STONAGE
RICHARD LOWELL FRANKEL
BROSS & FRANKEL
724 KENILWORTH AVE, SUITE 2
CHERRY HILL, NJ 08002

   *On behalf of Plaintiff*

PATRICK ROACH
SOCIAL SECURITY ADMINISTRATION
300 SPRING GARDEN ST
6TH FLOOR
PHILADELPHIA, PA 19123

   *On behalf of Defendant*

**HILLMAN**, District Judge

    This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding Plaintiff's application for Disability Insurance Benefits ("DIB")[1] under Title II of the Social Security

---

[1] DIB is a program under the Social Security Act to provide

Act.  42 U.S.C. § 423, et seq.  The issue before the Court is whether the Administrative Law Judge ("ALJ") erred in finding that there was "substantial evidence" that Plaintiff was not disabled at any time since his alleged onset date of disability, June 19, 2013.  For the reasons stated below, this Court will affirm that decision.

I.     BACKGROUND AND PROCEDURAL HISTORY

On September 14, 2015, Plaintiff, Samuel G., protectively filed an application for DIB,[2] alleging that he became disabled on June 19, 2013.  Plaintiff claims that he can no longer work in billing, sales, and housekeeping because of his bipolar disorder, anxiety, personality disorder, and attention deficit hyperactivity disorder (ADHD).[3]

Plaintiff's claim was denied initially and upon reconsideration.  Plaintiff requested a hearing before an ALJ,

---

disability benefits when a claimant with a sufficient number of quarters of insured employment has suffered such a mental or physical impairment that the claimant cannot perform substantial gainful employment for at least twelve months.  42 U.S.C. § 423 et seq.

[2] A protective filing date marks the time when a disability applicant made a written statement of his or her intent to file for benefits.  That date may be earlier than the date of the formal application and may provide additional benefits to the claimant.  See SSA Handbook 1507; SSR 72-8.

[3] On the amended alleged onset date of June 19, 2013, Plaintiff was 26 years old, which is defined as "a younger individual" (age 18-49).  20 C.F.R. § 404.1563.

2

which was held on December 17, 2018.  On February 25, 2019, the ALJ issued an unfavorable decision.  Plaintiff's Request for Review of Hearing Decision was denied by the Appeals Council on April 16, 2020, making the ALJ's decision final.  Plaintiff brings this civil action for review of the Commissioner's decision.

**II. DISCUSSION**

    **A.  Standard of Review**

Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny a complainant's application for social security benefits.  Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995).  A reviewing court must uphold the Commissioner's factual decisions where they are supported by "substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992).  Substantial evidence means more than "a mere scintilla."  Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id.  The inquiry is not whether the reviewing court would have made the same determination, but whether the Commissioner's conclusion was reasonable.  See Brown v. Bowen,

845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its totality. See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984). "[A] court must 'take into account whatever in the record fairly detracts from its weight.'" Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks v. Secretary of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988) (quoting Universal Camera Corp. V. NLRB, 340 U.S. 474, 488 (1951)).

The Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)). The Third Circuit has held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000). Similarly, an ALJ must also consider and weigh all of the non-medical evidence before him. Id. (citing Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)); Cotter v. Harris, 642 F.2d 700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all

4

> evidence and has sufficiently explained the
> weight he has given to obviously probative
> exhibits, to say that his decision is
> supported by substantial evidence approaches
> an abdication of the court's duty to
> scrutinize the record as a whole to
> determine whether the conclusions reached
> are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978).  Although an ALJ, as the factfinder, must consider and evaluate the medical evidence presented, Fargnoli, 247 F.3d at 42, "[t]here is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record," Hur v. Barnhart, 94 F. App'x 130, 133 (3d Cir. 2004).  In terms of judicial review, a district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams, 970 F.2d at 1182.  However, apart from the substantial evidence inquiry, a reviewing court is entitled to satisfy itself that the Commissioner arrived at his decision by application of the proper legal standards.  Sykes, 228 F.3d at 262; Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983); Curtin v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981).

    **B.    Standard for DIB**

The Social Security Act defines "disability" for purposes of an entitlement to a period of disability and disability insurance benefits as the inability to engage in any substantial gainful activity by reason of any medically determinable

5

physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). Under this definition, a Plaintiff qualifies as disabled only if her physical or mental impairments are of such severity that she is not only unable to perform her past relevant work, but cannot, given her age, education, and work experience, engage in any other type of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which she lives, or whether a specific job vacancy exists for her, or whether she would be hired if she applied for work. 42 U.S.C. § 1382c(a)(3)(B) (emphasis added).

The Commissioner has promulgated regulations[4] for determining disability that require application of a five-step sequential analysis. See 20 C.F.R. § 404.1520. This five-step process is summarized as follows:

1. If the claimant currently is engaged in substantial gainful employment, she will be found "not disabled."

2. If the claimant does not suffer from a "severe impairment," she will be found "not disabled."

3. If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix

---

[4] The regulations were amended for various provisions effective March 27, 2017. See 82 F.R. 5844. The parties do not indicate that any of the amendments are applicable to the issues presented by Plaintiff's appeal.

6

       1 <u>and</u> has lasted or is expected to last for a continuous period of at least twelve months, the claimant will be found "disabled."

4. If the claimant can still perform work she has done in the past ("past relevant work") despite the severe impairment, she will be found "not disabled."

5. Finally, the Commissioner will consider the claimant's ability to perform work ("residual functional capacity"), age, education, and past work experience to determine whether or not she is capable of performing other work which exists in the national economy. If she is incapable, she will be found "disabled." If she is capable, she will be found "not disabled."

20 C.F.R. § 404.1520(b)-(f). Entitlement to benefits is therefore dependent upon a finding that the claimant is incapable of performing work in the national economy.

    This five-step process involves a shifting burden of proof. <u>See</u> <u>Wallace v. Secretary of Health & Human Servs.</u>, 722 F.2d 1150, 1153 (3d Cir. 1983). In the first four steps of the analysis, the burden is on the claimant to prove every element of her claim by a preponderance of the evidence. <u>See id.</u> In the final step, the Commissioner bears the burden of proving that work is available for the Plaintiff: "Once a claimant has proved that he is unable to perform his former job, the burden shifts to the Commissioner to prove that there is some other kind of substantial gainful employment he is able to perform." <u>Kangas v. Bowen</u>, 823 F.2d 775, 777 (3d Cir. 1987); <u>see</u> <u>Olsen v. Schweiker</u>, 703 F.2d 751, 753 (3d Cir. 1983).

### C. Analysis

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability.  At step two, the ALJ found that Plaintiff's impairments of bipolar disorder, anxiety, personality disorder, and attention deficit hyperactivity disorder (ADHD) were severe.  At step three, the ALJ determined that Plaintiff's severe impairments or his severe impairments in combination with his other impairments did not equal the severity of one of the listed impairments.  The ALJ then determined that Plaintiff had the residual functional capacity ("RFC") to perform work at all exertional levels[5] with certain non-exertional restrictions.  After considering a vocational expert's testimony, the ALJ concluded that Plaintiff was not able to perform his past relevant work, but Plaintiff's RFC permitted him to work in other jobs in the national economy, such as a retail stocker and hand packer (steps four and five).

Plaintiff presents two arguments on appeal.  Plaintiff argues that the ALJ erred in failing to include an off-task or absenteeism limitation in the RFC.  Plaintiff also argues that the ALJ failed to properly consider the opinion evidence.  The

---

[5] See 20 C.F.R. § 404.1567 ("Physical exertion requirements. To determine the physical exertion requirements of work in the national economy, we classify jobs as sedentary, light, medium, heavy, and very heavy.").

8

Court does not find either argument availing.

### 1. Whether the ALJ erred in failing to include an off-task or absenteeism limitation in the RFC

A claimant's RFC reflects "what [the claimant] can still do despite [his or her] limitations," 20 C.F.R. § 404.1545(a), and the controlling regulations are clear that the RFC finding is a determination expressly reserved to the Commissioner rather than any medical source, 20 C.F.R. §§ 404.1527(d)(2), 404.1546(c).

When making the RFC determination, the ALJ is required to:

> [C]onsider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. By objective medical evidence, we mean medical signs and laboratory findings . . . . By other evidence, we mean . . . statements or reports from you, your treating or nontreating source, and others about your medical history, diagnosis, prescribed treatment, daily activities, efforts to work, and any other evidence showing how your impairment(s) and any related symptoms affect your ability to work. . . .

20 C.F.R. § 404.1529.

Additionally, the RFC assessment takes into consideration all of a claimant's medically determinable impairments in combination, including those that the ALJ has found to be severe, as well as those that are not deemed to be severe at step two. See 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 404.1520(c), 404.1521, and

9

404.1523, when we assess your residual functional capacity.").

Here, the ALJ found Plaintiff's RFC to be as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: only occasional contact with supervisors and co-workers; and no contact with the public. The claimant is able to do only simple and routine tasks.

(R. at 19.)

Plaintiff argues that despite finding that he had a moderate limitation in concentration, persistence, or pace, and despite acknowledging that he suffered fatigue from his medications, the ALJ erred by failing to include any limitations in the RFC related to these issues, such as a limitation to being off-task, or only being able to concentrate for a certain period of time. The Court does not agree.

First, the step three analysis - at which step the ALJ assessed Plaintiff's limitations in the area of concentration, persistence, or pace - is not the same as the RFC analysis. See SSR 96-8p ("The adjudicator must remember that the limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in

10

the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF.").

Second, the ALJ's limitation of "simple and routine tasks" in Plaintiff's RFC squarely addresses Plaintiff's moderate limitations in concentration, persistence, and pace. Torres v. Commissioner of Social Security, 2018 WL 1251630, at *6-7 (D.N.J. 2018) (citing Najmi-Nejad v. Barnhart, 75 F. App'x 60, 64 (3d Cir. 2003) (citing Burns v. Barnhart, 312 F.3d 113, 123 (3d Cir. 2002) (noting that the phrase "simple, routine, repetitive work" would account for "deficiencies in concentration, persistence [and] pace")); Russo v. Astrue, 421 F. App'x 184, 192 (3d Cir. 2011) (same)); see also Molloy v. Astrue, 2010 WL 421090, at *17 (D.N.J. 2010) ("The moderate mental limitations that ALJ O'Leary found in terms of social function and concentration, persistence and pace were made under Step 3 in order to assess whether Molloy met or equaled any of the impairments . . . . ALJ O'Leary's subsequent finding that Molloy is capable of 'simple' work was made under a Step 4 analysis. . . . There is no inconsistency, actual or theoretical, between ALJ O'Leary's findings that Molloy has moderate mental limitations in social function and concentration, persistence and pace, and that Molloy has the capacity to do simple work.").

11

Third, as for Plaintiff's argument that the ALJ failed to include an off-task limitation in the RFC, Plaintiff conflates the RFC assessment with the ALJ's burden at step five to demonstrate that Plaintiff is capable of performing other work which exists in the national economy.  At the hearing, the ALJ questioned a vocational expert ("VE") regarding whether a hypothetical person with Plaintiff's RFC could perform Plaintiff's past relevant work, and if not, whether that hypothetical person could perform any other jobs.  In response to questioning by the ALJ and Plaintiff's representative, the VE stated that being absent three to four days a month, or being off-task fifteen percent of a workday, would preclude all work in the national economy.  The VE also stated that an employer's tolerance for being absent would be twice a month at the unskilled level, and an employer's tolerance for being off-task would be ten percent at the unskilled level.  The VE further testified that during the first thirty-day training period on the job, most likely no absences would be acceptable.  (R. at 66-68.)  Based on these parameters, the VE testified that several jobs existed in the national economy that the hypothetical person with Plaintiff's RFC could perform.

Thus, the lack of specific limitations for being off-task or absent in the RFC is not error for three reasons.  One, no off-task or absenteeism limitation in the RFC was necessary

12

because Plaintiff's limitations in these areas did not exceed an employer's tolerance level.  In other words, even if the ALJ determined that Plaintiff would be off-task less than ten percent or absent two days a month, that finding would not erode the occupations that the ALJ determined Plaintiff was capable of performing at step five.  Moreover, although the VE testified that an absence during the training period would most likely not be acceptable to an employer, that general statement in the context of a hypothetical scenario without any specific correlation to Plaintiff himself does not render the RFC incomplete.

Two, as set forth above, the ALJ's RFC limitation to simple and routine tasks accounts for any issues with Plaintiff staying on-task.

Three, although Plaintiff contends that the "record is replete with evidence of the Plaintiff's inability to maintain adequate attendance due to his mental health (See e.g.) (AR, 375-377), (AR 398-400) and (AR 472-476)," (Pl's Brief, Docket No. 12 at 20), the record cited by Plaintiff is unintelligible (R. at 375-377, 398-400, 475-76), and it otherwise concerns Plaintiff's decision not to continue pursing certain treatment (R. at 472-476) rather than his ability to show up to work at a paying job.

Ultimately, Plaintiff contends that the RFC should have

13

contained greater limitations, but that challenge to the ALJ's RFC determination amounts to a disagreement with his assessment, rather than showing that substantial evidence does not support that determination.  See, e.g., Perkins v. Barnhart, 79 F. App'x 512, 514-15 (3d Cir. 2003) ("Perkins's argument here amounts to no more than a disagreement with the ALJ's decision, which is soundly supported by substantial evidence."); Moody v. Commissioner of Social Security Administration, 2016 WL 7424117, at *8 (D.N.J. 2016) ("[M]ere disagreement with the weight the ALJ placed on the opinion is not enough for remand."); Grille v. Colvin, 2016 WL 6246775, at *8 (D.N.J. 2016) ("Distilled to its essence, Plaintiff's argument here amounts to nothing more than a mere disagreement with the ALJ's ultimate decision, which is insufficient to overturn that decision.").  Consequently, the Court finds that the ALJ did not err in not including off-task or absenteeism limitations in Plaintiff's RFC.

### 2. Whether the ALJ failed to properly consider the opinion evidence in formulating Plaintiff's RFC

An ALJ is required to state what weight he ascribes to a medical opinion, but not to other forms of medical evidence.  20 C.F.R. § 404.1527(c) ("How we weigh medical opinions. Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's medical opinion controlling weight under paragraph (c)(2) of this section, we

14

consider all of the following factors in deciding the weight we give to any medical opinion."). Plaintiff takes issue with the ALJ's assessment of the opinions of three medical sources. As with Plaintiff's first challenge to the RFC, Plaintiff's second challenge presents his disagreement with the ALJ's conclusions, rather than showing how those conclusions are not supported by substantial evidence.

Alan Rosenweig, D.O. treated Plaintiff several times from 2014-2018, and Dr. Rosenweig completed five medical source statements. (R. at 27-28, citing the record.) The ALJ afforded "all of Dr. Rosenzweig's reports . . . limited weight as they are extreme without explanation and not supported by the medical evidence of record." (R. at 28.) Plaintiff argues, "There is nothing 'extreme' about these opinions, and the rationale based on the combination of the Plaintiff's Bipolar Disorder and the documented medication side effects is reasonable on the face." (Docket No. 12 at 21.) This argument is a mere difference of opinion without any substantive support as to how the ALJ's assessment of Dr. Rosenzweig's reports were not supported by the record.

Moreover, the ALJ specifically recounted all of Dr. Rosenweig's opinions (R. at 27-28), and he explained why he found Dr. Rosenweig's opinions to be "extreme":

All of Dr. Rosenzweig's reports are given limited weight as

15

>they are extreme without explanation and not supported by the medical evidence of record. The first one at Exhibit 3F indicated no limitations, which contradicts all medical evidence of record. The claimant has some limitations secondary to his mental impairments. However, when he takes his medication, he has been found to have intact concentration, memory and judgment and insight into his symptoms and need for treatment (Exhibit 10F).
>
>Therefore, the rest of Dr. Rosenzweig's opinions, which find that the claimant has limitations in all areas, which prevents him from performing work on a sustained basis, are given little weight for the same reasons. In addition, the examination reports in Exhibits 7F, 8F and 11F were completed for a different agency with different definitions and requirements. Further, a finding of disability is reserved for the Commissioner.

(R. at 28.)[6]  This explanation satisfies the ALJ's duty "to accept or reject all or part of any medical source's opinion, as long as the ALJ supports his assessment with substantial evidence."  Plummer v. Apfel, 186 F.3d 422, 439 (3d Cir. 1999), cited by Brownawell v. Commissioner, 554 F.3d 352, 355 (3d Cir. 2008)); Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981) ("We are also cognizant that when the medical testimony or

---

[6] The Court notes that Dr. Rosenweig's opinions were provided on check-the-box forms, which are considered "weak evidence." Rafine v. Commissioner of Social Security, 2020 WL 3073829, at *6 (D.N.J. 2020) (citing Stelzer v. Commissioner of Social Security, 2019 WL 950165, at *6 (D.N.J. 2019) (citing Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best."); Zonak v. Commissioner of Social Sec., 290 F. App'x 493, 497 (3d Cir. 2008) (affirming the ALJ's rejection of the plaintiff's treating physician's opinion because it was provided on a check-box form and no reasons were given in support of the doctor's conclusion on that form)).

16

conclusions are conflicting, the ALJ is not only entitled but required to choose between them.... [W]e need from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected.").

Plaintiff makes a similar argument for the ALJ's assessment of the opinion of a consultative examining source, Lewis A. Lazarus, Ph.D., who examined Plaintiff once on August 10, 2016. (R. at 384-386.)  The ALJ afforded the opinion of Dr. Lazarus partial weight because it was "supported by the medical evidence of record."  (R. at 28.)  Plaintiff argues, "Dr. Lazarus felt that the Plaintiff would require both vocational assessment and rehabilitation in order to find an occupation and opined that the Plaintiff could not handle his own funds.  Despite stating this opinion was supported by the record, these limitations were not addressed in the RFC."  (Docket No. 12 at 21-22.)

An ALJ is not required to accept and incorporate every opinion by an examining source, Cotter, 642 F.2d at 705, and by not specifically including limitations for a vocational assessment and the handling of funds, the ALJ implicitly demonstrated one part of Dr. Lazarus's opinion he did not credit, as reflected by only affording "partial weight" to that opinion.  Moreover, other than this one-time consultative examination, Plaintiff does not show in the record any other

17

evidence that would support such limitations. Additionally, as noted by the ALJ several times in his decision, the RFC determination is reserved for the ALJ, and not any medical provider. See 20 C.F.R. §§ 404.1527(d)(2), 404.1546(c).

Finally, Plaintiff argues that the ALJ erred in the assessment of Marcia Baruch, Ph.D. On November 27, 2018, Dr. Baruch performed an examination of Plaintiff at the request of his counsel in support of his disability application. In the section of the decision discussing the opinion evidence, the ALJ found:

> Dr. Baruch opined that the claimant is functionally impaired and could not adequately perform in a work setting (Exhibit 9F). Dr. Baruch's opinions are given limited weight. These opinions are conclusory and are minimally helpful in determining whether the claimant is able to do simple work where there is limited contact with others.

(R. at 28.)

> Plaintiff argues:
>
> Stating that these opinions were vague or not helpful in addressing the ability to do simple work is simply incorrect where the ALJ failed to actually address the doctor's opinions on exactly that issue. Explicitly the ALJ also did not address Dr. Baruch's Mental Medical Source Statement, in which the doctor offered specific opinions as to the claimant's aptitudes in 16 discrete areas "needed to do unskilled work." (AR 406-421). The ALJ cannot reject this opinion as conclusory or irrelevant when the doctor offered specific opinions on exactly the issues the ALJ states she did not. In short, the ALJ ignored the doctor's opinions on the issues the ALJ felt were necessary to be helpful, and rejected the opinion based on the purported lack of the same. This is an error of fact.

(Docket No. 12 at 22.)

18

Plaintiff argues that the ALJ ignored Dr. Baruch's medical source statement, but that statement was part of Dr. Baruch's entire report, which the ALJ explained was conclusory and minimally helpful. Indeed, the medical source statement is a check-the-box form on which the medical provider simply checks whether a claimant is "unlimited," "limited but satisfactory," "seriously limited," "unable to meet competitive standards," and "no useful ability to function" in sixteen areas to assess "mental abilities and aptitudes needed to do unskilled work." (R. at 418.) Dr. Baruch checked "no useful ability to function" in seven boxes, "unable to meet competitive standards" in four boxes, "seriously limited" in four boxes, and "limited but satisfactory" in one box. (Id.) These conclusions were contrasted with the other record evidence and Plaintiff's own testimony, all of which the ALJ detailed in the decision over several pages. (R. at 18-28.) Moreover, in the recitation of the medical evidence section of his decision, the ALJ summarized in detail the narrative part of Dr. Baruch's report. (R. at 25.)

As noted above, *supra* note 6, check-box forms are minimally probative to a claimant's RFC. Additionally, an ALJ is permitted to reduce his reliance upon a physician's opinions if those opinions are inconsistent with other medical evidence, and

19

if he explains his reasoning, Plummer, 186 F.3d at 439, which is exactly what the ALJ did here.  The Court does not find that the ALJ erred in the assessment of Dr. Baruch's opinion.

## CONCLUSION

Plaintiff's appeal of the denial of his disability benefits focuses on the ALJ's RFC determination.  For the reasons expressed above, the ALJ's comprehensive assessment of the medical evidence and explanation of the weight he afforded to it renders Plaintiff's RFC determination - and his decision in its entirety - supported by substantial evidence.  See Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (U.S. 2019) (reiterating that the threshold for such evidentiary sufficiency under the substantial evidence standard is not high, and it "means - and means only - such relevant evidence as a reasonable mind might accept as adequate to support a conclusion").  Thus, the ALJ's determination that Plaintiff was not totally disabled as of June 19, 2013 will be affirmed.

An accompanying Order will be issued.


Date: September 29, 2021          s/ Noel L. Hillman
At Camden, New Jersey             NOEL L. HILLMAN, U.S.D.J.